People v Norlite, LLC (2026 NY Slip Op 01105)

People v Norlite, LLC

2026 NY Slip Op 01105

Decided on February 26, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 26, 2026

CV-25-0091
[*1]The People of the State of New York et al., Respondents, and Green Education and Legal Fund et al., Appellants,
vNorlite, LLC, Defendant.

Calendar Date:January 7, 2026

Before:Clark, J.P., Aarons, Pritzker, Reynolds Fitzgerald and Fisher, JJ.

Pace Environmental Litigation Clinic, Inc., White Plains (Todd D. Ommen of counsel), for appellants.
Letitia James, Attorney General, Albany (Brian Lusignan of counsel), for respondents.
Delaware Riverkeeper Network, Glen Spey (Kacy C. Manahan of counsel), for Delaware Riverkeeper Network and another, amici curiae.

Fisher, J.
Appeal from an order of the Supreme Court (Kimberly O'Connor, J.), entered December 30, 2024 in Albany County, which, among other things, upon renewal, granted a motion by certain plaintiffs to partially dismiss certain cross-claims.
Defendant owns and operates an industrial facility located in Albany County, partly located in the Town of Colonie and partly in the City of Cohoes. At this facility, defendant mines shale from an on-site quarry and processes it into sellable aggregate through various processes. Each production step can result in different types of air pollution that could cause deleterious health effects when inhaled. Defendant operates such facility under an air emissions permit issued by plaintiff Department of Environmental Conservation (hereinafter DEC) pursuant to the comprehensive substantive standards and procedural requirements of ECL article 19 and title V of the Clean Air Act (see 42 USC § 7661 et seq.), as well as a hazardous waste permit issued pursuant to the similarly comprehensive requirements of ECL article 27. As part of the many conditions of those permits, defendant is required to implement a fugitive dust plan designed to minimize the release of air pollutants from its facility.
Despite defendant's plan, nearby residents have reported exposures to clouds of dust originating from defendant's facility for several years. In response, DEC has issued multiple notices of violation, charging defendant with failures to comply with various conditions of its air emissions permit and the ECL — including by failing to adequately implement dust control measures. In resolving these charges since June 1990, defendant has cumulatively paid over half a million dollars in penalties and contributions to environmental benefit projects, as well as committing to undertake a variety of additional actions to reduce the exposure of nearby residents to dust from its facility.
In October 2022, following continued releases of fugitive dust from defendant's facility, plaintiffs State of New York and DEC (hereinafter collectively the state plaintiffs) commenced an action against defendant alleging a public nuisance and violations of various statutory, regulatory and permit conditions, seeking civil penalties and a permanent injunction to abate such nuisance and enjoin the violations. The remaining plaintiffs — a group of individuals and organizations whose members are adversely impacted by the fugitive dust emissions (hereinafter the intervenors) — intervened in the enforcement action against defendant and filed a third-party complaint asserting causes of action against both defendant and the state plaintiffs. As relevant here, the intervenors interposed a cross-claim seeking a declaratory judgment against DEC declaring that permitting the continued operation of defendant's facility in a manner that results in fugitive dust emissions violates their rights to a clean and healthful environment under the Green Amendment to the NY Constitution. [*2]The intervenors also sought an injunction directing DEC to revoke or rescind defendant's permits and prohibit defendant from resuming operation. The state plaintiffs then moved to dismiss the cross-claim for failure to state a cause of action, contending that the Green Amendment did not create a cause of action to compel enforcement action by DEC, and therefore the agency could not be compelled to perform a discretionary function through a writ of mandamus. Supreme Court ultimately granted such motion and dismissed this cause of action against the state plaintiffs, predominantly relying on a recent decision handed down by the Fourth Department (see Fresh Air for the Eastside, Inc. v State of New York, 229 AD3d 1217, 1220 [4th Dept 2024], appeal dismissed 42 NY3d 1084 [2025], lv denied 44 NY3d 907 [2025]). The intervenors appeal, and this Court granted leave for Delaware Riverkeeper Network and Green Amendments for Generations to appear as amici curiae (hereinafter the amici).
We affirm. The Green Amendment to the NY Constitution declares that "[e]ach person shall have a right to clean air and water, and a healthful environment" (NY Const, art I, § 19). Effective January 1, 2022, the Green Amendment was adopted by a significant majority of New York voters in November 2021. Prior to its ratification, as required for amending the constitution through a ballot initiative (see NY Const, art XIX, § 1), the Green Amendment passed in the Assembly and Senate in successive legislative sessions (see 2021-2022 NY Senate-Assembly Bill S528, A1368; 2019-2020 NY Senate-Assembly Bill, S2072, A2064), where it was proposed as following the models set forth by several other states (see Senate Sponsor's Mem in Support, 2019-2020 Senate Bill S2072). But unlike the amendments enacted in those states, the version of the Green Amendment proposed and ratified in New York did not include language requiring the State to enforce the amendment (see Mont Const, art II, § 3; art IX, § 1; Pa Const, art I, § 27), or expressly authorizing members of the public to enforce the amendment (see Haw Const, art XI, § 9; Mont Const, art IX, § 1). Assembly hearings related to the proposal confirmed this point, where assemblymembers sponsoring the Green Amendment acknowledged that it would not change any other laws and did not afford citizens any additional rights of action against individuals or businesses beyond existing claims for public nuisance, land use laws and negligence (see Friends of Fort Greene Park v NYC Parks & Recreation Dept., 87 Misc 3d 1064, 1093-1094 [Sup Ct, NY County 2025, Chesler, J.]; see also Streeter v New York City Dept. of Envtl. Protection, 83 Misc 3d 417, 422 [Sup Ct, Kings County 2024, Frias-ColÓn, J.]).
With this backdrop, we disagree with the contentions of the intervenors and amici that the Green Amendment "creat[es] a self-executing substantive right that imposes environmental standards above and beyond the state's preexisting — and robust — environmental [*3]regulatory regime" (Chan v United States Dept. of Transp., 2024 WL 5199945, *38, 2024 US Dist LEXIS 231658 *133-134 [SD NY, Dec. 23, 2024, 23-cv-10365 (LJL)]; see Galbraith v City of Buffalo, ___ F Supp 3d ___, ___, 2025 WL 3456169, *7, 2025 US Dist LEXIS 252579, *18-19 [WD NY, Oct. 20, 2025, No. 23-cv-814 (JLS)]). Indeed, "New York courts have held that a private right of action for violations of the state constitution is unavailable if an alternative remedy is available elsewhere, such as under state tort law or through a" CPLR article 78 proceeding (Alwan v City of New York, 311 F Supp 3d 570, 586 [ED NY 2018]; see Martinez v City of Schenectady, 97 NY2d 78, 83 [2001]; Shelton v New York State Liq. Auth., 61 AD3d 1145, 1150 [3d Dept 2009]; see also Galbraith v City of Buffalo, ___ F Supp 3d at ___, 2025 WL 3456169, *8, 2025 U.S. Dist. LEXIS 252579, *20 ["The existence of these alternative remedies precludes a private right of action under the Green Amendment" (citation omitted)]).
In turning to those alternative remedies, we decline the intervenors' and amici's invitation to depart from the reasoning of the Fourth Department. Although the intervenors pleaded a cause of action in "the complaint [which]ostensibly seeks declaratory relief, it is essentially a CPLR article 78 proceeding in the nature of mandamus, seeking to compel the State to take enforcement action against a private entity" (Fresh Air for Eastside, Inc. v State of New York, 229 AD3d at 1219 [internal quotation marks and citation omitted]). A writ of mandamus "lies where an administrative body has failed to perform a duty enjoined upon it by law, the performance of that duty is mandatory and ministerial rather than discretionary, and there is a legal right to the relief sought" (Matter of Hoffman v New York State Ind. Redistricting Commn., 41 NY3d 341, 364 [2023]; see Matter of Melendez v New York State Dept. of Corr. & Community Supervision, 240 AD3d 1111, 1112 [3d Dept 2025], lv denied ___ NY3d ___ [Feb. 19, 2026]). A ministerial act is "best described as one that is mandated by some rule, law or other standard and typically involves a compulsory result" (Hussain v Lynch, 215 AD3d 121, 126 [3d Dept 2023] [internal quotation marks and citations omitted]). However, the extraordinary remedy of "mandamus is not available to compel an officer or body to reach a particular outcome with respect to a decision that turns on the exercise of discretion or judgment that could theoretically produce a variety of acceptable outcomes" (Clements v New York Secretary of State, 227 AD3d 84, 87 [3d Dept 2024] [internal quotation marks, brackets and citations omitted], appeal dismissed 43 NY3d 955 [2025]; see New York Civ. Liberties Union v State of New York, 4 NY3d 175, 184 [2005]). This specifically includes instances where "a party seeks to compel an administrative agency of the State to take enforcement action against a private entity" (Fresh Air for Eastside, Inc. v State of New York, 229 AD3d [*4]at 1219).
Here, the intervenors contend that their constitutional rights to clean air and a healthful environment have been violated by DEC's regulatory failure to take enforcement action against defendant based on its inadequate implementation of fugitive dust control measures. These allegations are grounded in the issuance of the air emissions and hazardous waste permits to defendant, which allow an enforcement action when the permit conditions are not being met (see 6 NYCRR 201-1.12) or the permit is "held by unqualified or unsuitable persons" (ECL 27-0913 [3]). Contrary to the intervenors' contentions, the facts here do not suggest a ministerial duty, as the Legislature imbued DEC with discretionary enforcement authority by providing that DEC "may modify, suspend or revoke a permit" (ECL 70-0115 [1]) and lists "[s]ome of the factors which [DEC] may consider in arriving at [its] determination" (ECL 27-0913 [3]; see 6 NYCRR 201-1.12 [a]). Such variation in acceptable outcomes is observable by virtue of the extensive list of resolutions that defendant agreed to when resolving prior charges, ranging from monetary fines and environmental benefit donations to other capital expenditures to the facility (see Tango v Tulevech, 61 NY2d 34, 41 [1983]; Clements v New York Secretary of State, 227 AD3d at 89-90; Willows Condominium Assn. v Town of Greenburgh, 153 AD3d 535, 537 [2d Dept 2017]). While perhaps these outcomes are unsatisfactory to the intervenors, as private parties they cannot use mandamus "to compel a particular outcome" from an administrative agency (Alliance to End Chickens as Kaporos v New York City Police Dept., 32 NY3d 1091, 1093 [2018], cert denied 587 US 1027 [2019]; see Fresh Air for Eastside, Inc. v State of New York, 229 AD3d at 1219-1220).
Accordingly, Supreme Court properly granted the state plaintiffs' motion to dismiss the intervenors' third cause of action. Since we have found that cause of action to essentially be one for mandamus under CPLR article 78, we find it duplicative and unnecessary to address it further within the context of CPLR 3001 (see Central Hudson Gas & Elec. Corp. v Public Serv. Commn., 242 AD3d 33, 36-37 [3d Dept 2025]). We have examined the remaining contentions of the parties and amici, and have found them to be academic or without merit.
Clark, J.P., Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is affirmed, without costs.